**Helen M. PAGE, on behalf of herself and all others similarly situated, Plaintiffs,**

v.

**Richard S. SCHWEIKER,[1] Secretary of Health and Human Services, Defendant.**

Civ. A. No. 82–1338.

United States District Court, M.D. Pennsylvania.

Sept. 2, 1983.

ices. On March 9, 1983, Margaret M. Heckler replaced Secretary Schweiker. Therefore, Secretary Heckler is substituted as defendant and references to "the Secretary" in this memorandum are to either Schweiker or Heckler, depending upon the relevant time period.

M. Duke Pepper, Paul D. Welch, Central Pennsylvania Legal Services, New Bloomfield, Pa., for plaintiffs.

David Dart Queen, U.S. Atty., Barbara K. Kosik, Asst. U.S. Atty., Harrisburg, Pa., for defendant; Diane C. Moskal, Regional Atty., Gary S. Turetsky, Asst. Regional Atty., Region III, Dept. of Health and Human Services, Philadelphia, Pa., of counsel.

## MEMORANDUM

CALDWELL, District Judge.

Before us for disposition is defendant's motion to dismiss or, alternatively, for summary judgment. For the reasons discussed hereinafter, the motion is denied.

## I. Background

On October 27, 1982, plaintiff filed her complaint against the Secretary of Health and Human Services challenging the procedure utilized by the Social Security Administration (SSA) to recoup purported overpayments from Supplemental Security Income (SSI) beneficiaries.[2] Plaintiff sought to bring a class action on behalf of "every SSI beneficiary within the Commonwealth of Pennsylvania who has requested a waiver of an alleged SSI overpayment and who has not or will not be given a face to face meeting/hearing prior to the institution of recoupment procedures by the SSA." Complaint at ¶ 2.

Pursuant to section 1631(b)(1) of the Social Security Act, 42 U.S.C. § 1383(b)(1), erroneous overpayments to beneficiaries

---

**2.** The SSI program is provided for under title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* and benefits, on the basis of financial need, persons who are aged, blind, or otherwise eligible for aid under the provisions of the law.

may be recouped by the government. Plaintiff was found eligible for SSI benefits on December 3, 1981, and on or about July 21, 1982, she received a notice of overpayment. On or about July 29, 1982, plaintiff requested a waiver of the planned recoupment and completed an "Overpayment Recovery Questionnaire" in which she indicated that she had not understood that she needed to report changes in her widow's benefits from the Veterans' Administration (VA) and that this requirement had not been explained to her.[3] She further listed her monthly income as totalling $329.90 from a $32.40 SSI payment and $297.50 in VA benefits. Her usual household expenses consisted of $50.00 (excluding food stamps) for food, $65.00 for utilities, $35.00 for life insurance, and $5.40 for another insurance payment. Plaintiff calculated the total to be $205.40, but a review of the figures indicates that the correct total was $155.40.

A notice from the SSA dated September 1, 1982, indicated that plaintiff was not "without fault" with respect to the overpayment and that recoupment would commence on October 1, 1982. That notice gave plaintiff a choice of three courses of action pursuant to 20 C.F.R. § 416.1413. These are case review, informal conference, or formal conference. It appears from the record that plaintiff's counsel on September 14, 1982, orally requested reconsideration and that no specific form of review was scheduled.[4] On September 28, 1982, plaintiff was notified that her reconsideration

request was denied and that recoupment would begin on November 1, 1982. Following that decision, the present action was filed.[5]

## II. The Standing and Mootness Issues

Defendant has alleged the existence of two obstacles that plaintiff must overcome before the merits of her case are properly before us.[6] One of these is standing and the other is mootness. Standing, as both parties recognize, is the "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

A recent comprehensive discussion of standing is found in *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). In that case the Court focused on Article III § 2, clause 1 of the Constitution and its restriction of the federal judicial power to the resolution of "cases" and "controversies" and stated,

[A]t an irreducible minimum, Art III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood,* 441 US 91, 99, 60 L Ed 2d 66, 99 S Ct 1601 [1608] (1979), and that the injury "fairly can be traced

---

**3.** Waiver of a recoupment claim by the Secretary is authorized by § 1631(b)(1) of the Social Security Act, 42 U.S.C. § 1383(b)(1) subject to the criteria contained in the applicable regulations, 20 C.F.R. § 416.550 *et seq.*

**4.** Plaintiff contends that her counsel was not asked what reconsideration procedure was desired and that counsel was never contacted by the SSA regarding the matter. Defendant contends that numerous telephone efforts were made unsuccessfully and that finally a case review was conducted. This discrepancy, although it does evidence a factual dispute, does not create a genuine issue of material fact that precludes our reaching all aspects of the matter now before us.

**5.** Apparently, plaintiff's counsel had been given some indication that a face to face hearing

could be scheduled. That representation, however, was made after the papers were already prepared to initiate the current action.

**6.** Defendant has also raised a jurisdictional issue and claims that the court lacks subject matter jurisdiction because plaintiff has not exhausted administrative remedies. This position is unpersuasive in that we conclude the regulations at issue and the procedure they establish regarding waiver of recoupment of purported overpayments to SSI beneficiaries represent the final position of the Secretary. Furthermore, we find that plaintiff has asserted at least a "colorable" constitutional claim. Defendant's attack on subject matter jurisdiction grounds is therefore rejected.

to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v Eastern Kentucky Welfare Rights Org.* 426 US 26, 38, 41, 48 L Ed 2d 450, 96 S Ct 1917 [1924] (1976). [footnote omitted]

*Id.* 454 U.S. at 472, 102 S.Ct. at 758, 70 L.Ed.2d at 709. In construing this language, however, we are mindful of the warning that too little attention has been paid "to guard[ing] against the possibility that judges will use standing to slam the courthouse door against plaintiffs who are entitled to full consideration of their claims on the merits." *Barlow v. Collins,* 397 U.S. 159, 178, 90 S.Ct. 832, 844, 25 L.Ed.2d 192, 206 (1970) (Brennan, J., concurring in the result and dissenting). *See also Valley Forge, supra,* 454 U.S. at 490, 102 S.Ct. at 768, 70 L.Ed.2d at 721 (Brennan, J., dissenting). Also of interest to us in reaching our present conclusions is the decision in *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), wherein the Supreme Court found that nineteen named individuals who sought to bring a civil rights class action did not have standing. In so concluding, the Court noted that the complaint stated no real or immediate injury or threat of injury but rather indicated generally a continuing pattern of prohibited conduct by defendants. The court conceded that although "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," the prospect of future injury had not been sufficiently demonstrated. The elements of speculation and conjecture found in *O'Shea,* however, do not exist in the present case. Mrs. Page, because she is challenging the procedure used to make recoupment decisions on SSI benefits, runs exactly the same risk she ran before. If she requests waiver in the future when the SSA concludes that she has been overpaid, her request will be reviewed and an initial determination made without her being given a hearing or an opportunity for one. The Secretary's argument loses sight of the fact that the injury complained of here occurred when the waiver request was not sufficient to accord Mrs. Page the opportunity for a face to face hearing before any decision on the waiver was made. Under the circumstances we believe this action falls within the ambit of the Article III standing requirements. There exists a threatened injury traceable to the challenged action and we decline to deprive plaintiff of the opportunity to have the court evaluate her substantive claim simply because we might analyze the standing issue to exclude her.

Standing is a confusing and often elusive concept, and we do not find defendant's argument against standing persuasive. The point of plaintiff's action, as we perceive it, is to challenge the two step procedure a beneficiary must follow before a face-to-face hearing will be scheduled. Even though plaintiff ultimately received such a hearing and is going through the administrative procedures established by the Secretary's regulations, we cannot accept defendant's position that plaintiff lacks standing nor that her action is moot.

■ With regard to the mootness issue, it is realized that various circumstances exist under which a claim can become moot, but we do not believe the facts as they have occurred in the present matter warrant such a finding. Plaintiff initiated her challenge to the Secretary's recoupment procedures on her own behalf and on that of others similarly situated. Were we to accept defendant's mootness argument, the Secretary's procedures would be insulated from attack by anyone who eventually receives a face to face prerecoupment hearing. Furthermore, we would be encouraging the Secretary to grant a hearing whenever a legal action such as the present one was filed or was imminent and thus moot the claim. This problem becomes even more pronounced in the context of a class action.

We note that defendant's brief devotes only one paragraph to the mootness issue and overlooks completely the fact that the present matter was brought as a class action. Several cases decided by the United States Supreme Court have adopted the general rule that a federal class action does

not become moot merely because the controversy was mooted as to the named plaintiff(s). For example in *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), a plaintiff whose divorce action had been dismissed in state court challenged the one year state residency requirement responsible for the dismissal and brought a federal class action. The parties stipulated that the requirements for class certification had been met. In the present matter, although the parties have not stipulated to the satisfaction of requirements for class certification, we nonetheless believe that the criteria in Federal Rule of Civil Procedure 23 could be met so as to have certification granted. In *Sosna* the Supreme Court examined the mootness issue and noted that plaintiff Sosna had long since satisfied the residency requirement, which had been upheld, and that she had obtained her divorce in another state so that the case would ordinarily be considered moot. The *Sosna* Court, however, concluded that the certification of the class precluded a finding of mootness. More importantly and of significance to the present matter, the Court recognized that certification is not always a prerequisite to a favorable decision on the mootness issue.

There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Id.* at 402 n. 11, 95 S.Ct. at 559, 42 L.Ed.2d at 542. This language in *Sosna* was cited *White v. Mathews,* 434 F.Supp. 1252, 1259 (D.Conn.1976), *aff'd,* 559 F.2d 852, 856 (2d Cir.1977) to reject a mootness argument in a case challenging delays at the administrative hearing state in disability matters under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* The *White* court found that the case was not mooted even though certification of the class did not occur until after the named plaintiff's individual controversy ended.

In the present case, all aspects of the certification issue have not yet been explored, partly at the behest of defendant, who moved for a protective order staying discovery pending disposition of defendant's motion to dismiss. Obviously under the circumstances we would not be inclined to accept defendant's mootness argument. As was the district court in *White,* we have been fully apprised of the broad nature of the present controversy from the date on which this action was filed and have postponed ruling on the class certification issue. Accordingly, the case is not moot. Additionally, it is noted that two motions for intervention have been filed, and we could allow an intervenor to come into the case at this stage of the proceedings. That we are not now doing so reinforces our position that the named representative plaintiff maintains a "live" interest in the outcome of these proceedings.

### III. The Merits

In addressing the merits of the claim presented in the present action, we have carefully reviewed the case of *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). In *Yamasaki,* the Supreme Court unanimously upheld decisions below requiring that beneficiaries of social security old age and disability payments, who had filed written requests for waiver, be afforded the opportunity for a hearing prior to the initiation of recoupment to recover purported overpayments. *See Elliott v. Weinberger,* 371 F.Supp. 960 (D.Haw. 1974) and *Buffington v. Weinberger,* Civil No. 734–73C2 (W.D.Wash., Oct. 22, 1974).

█ In reaching our decision, based largely on *Yamasaki* and its progeny, we are mindful of the delineation in *Santise v. Schweiker,* 676 F.2d 925 (3d Cir.1982), of the proper scope of judicial review when regulations promulgated by the Secretary are challenged. Essentially courts are required to give great deference to the agency's reg-

ulations which are promulgated to put into effect the statutory scheme, and courts should uphold regulations absent a finding of arbitrariness, caprice, an abuse of discretion, or some other lack of accord with law. *Id.* at 933. The same degree of deference to the Secretary's practice occurred in an SSI context, albeit on different issues than those before us, in *Beatty v. Schweiker,* 678 F.2d 359 (3d Cir.1982).

Returning to the analysis in *Yamasaki, supra,* and plaintiff's reliance thereon, we note that the Supreme Court, having granted certiorari on petition by the Secretary, properly avoided a decision on constitutional grounds and held that the standards established by the statute itself made a hearing "essential" with respect to § 204(b) waiver of the Secretary's right to recoup.[7] 442 U.S. at 693, 99 S.Ct. at 2553, 61 L.Ed.2d at 187. The heart of the *Yamasaki* matter, decided in the negative, was "whether making the decision by regional office review of the written waiver request ... [was] sufficient to protect the recipient's right not to be subjected to an improper recoupment." *Id.* 442 U.S. at 695, 99 S.Ct. at 2555, 61 L.Ed.2d at 189. The challenged procedure utilized by the Secretary, and found lacking by the Supreme Court, was one that required two steps to be taken by Title II beneficiaries threatened with recoupment before they could obtain a hearing. As in the present matter, beneficiaries first had to request waiver, after which regional office "paper review" was conducted. Only after an adverse determination was a beneficiary given an opportunity to request a hearing.

In drawing its conclusions, the *Yamasaki* Court focused on the mandatory language of § 204(b) of the Social Security Act that "there shall be no adjustment of payments to, or recovery by the United States from any person who is without fault if such adjustment would defeat the purpose of this subchapter or would be against equity

and good conscience." *Id.* at 693–94, 99 S.Ct. at 2554, 61 L.Ed.2d at 188. The Court then examined the standard for Title II cases for determining "fault." That standard, found in 20 C.F.R. § 404.507, states that "The Administration will consider all pertinent circumstances, including ... age, intelligence, education, and physical and mental condition." With regard to these criteria the Court found that evaluating fault, particularly as influenced by intelligence, physical condition, and mental condition, usually turned on credibility and that therefore documents were "a particularly inappropriate way to distinguish a genuine hard luck story from a fabricated tall tale." *Id.* at 697, 99 S.Ct. at 2555, 61 L.Ed.2d at 190. The Court further observed:

The consequences of the injunctions entered by the District Courts confirm the reasonableness of interpreting § 204(b) to require a prerecoupment oral hearing. In compliance with those orders, the Secretary, beginning with calendar year 1977, has granted what respondents term "a short personal conference with an impartial employee of the Social Security Administration at which time the recipient presents testimony and evidence and cross-examines witnesses, and the administrative employee questions the recipient." Brief for Respondents 46. Of the approximately 2,000 conferences held between January 1977 and October 1978, 30% resulted in a reversal of the Secretary's decision. Brief for Petitioner 46. This rate of reversal confirms the view that, without an oral hearing, the Secretary may misjudge a number of cases that he otherwise would be able to assess properly, and that the hearing requirement imposed by the Court of Appeals significantly furthers the statutory goal that "there shall be *no*" recoupment when waiver is appropriate. We therefore agree with the Court of Appeals that an opportunity for a pre-recoupment oral

7. Numerous cases have held that when a case may be decided on constitutional or statutory grounds, constitutional issues should not be adjudicated without first considering statutory matters. *Id.* at 692, 99 S.Ct. at 2553, 61 L.Ed.2d at 187. *See also New York Transit Authority v. Beazer,* 440 U.S. 568, 582–83 and n. 22, 99 S.Ct. 1355, 1364 and n. 22, 59 L.Ed.2d 587 (1979).

hearing is required when a recipient requests waiver under § 204(b).

*Id.*

These observations in *Yamasaki* are particularly persuasive because the mandatory language in § 204(b) of the Social Security Act governing Title II cases parallels that of § 1383(b)(1) governing Title XVI cases. In addition, "fault" in Title XVI cases is similarly construed under 20 C.F.R. § 416.-552, which in relevant part states,

Whether an individual is "without fault" depends on all the pertinent circumstances surrounding the overpayment in the particular case. The Social Security Administration considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition). Although the finding depends on all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from one of the following:

(a) Failure to furnish information which the individual knew or should have known was material;

(b) An incorrect statement made by the individual which he knew or should have known was incorrect (this includes the individual's furnishing his opinion or conclusion when he was asked for facts), or

(c) The individual did not return a payment which he knew or could have been expected to know was incorrect.

This determination of "fault" is crucial because being "without fault" is required for

waiver. The applicable regulation, 20 C.F.R. § 416.550, provides:

Waiver of adjustment or recovery of an overpayment of supplemental security income benefits is applicable (see section 1631(b) of the Act) when:

(a) The overpaid individual was without fault in connection with an overpayment, and,

(b) Adjustment or recovery of such overpayment would either:

(1) Defeat the purpose of title XVI, or

(2) Be against equity or good conscience, or

(3) Impede efficient or effective administration of title XVI due to the small amount involved.

In the present matter, as noted, once an adverse decision is rendered by the Secretary with regard to waiver, a beneficiary must request reconsideration if he desires an opportunity to present other than "paper evidence." [8] *See* 20 C.F.R. § 416.1407 *et seq.* Reconsideration procedures are set forth in 20 C.F.R. § 416.1413, and consist of case review, informal conference, and formal conference. In each of these procedures, an opportunity is provided for a face to face presentation to the reviewing SSA official. In case review, a beneficiary may, for example, present oral evidence. In the informal conference procedure, witnesses may be presented and a summary record is kept. The formal conference also entails the filing of a summary record and provides the opportunity to subpoena and cross-examine adverse witnesses and to subpoena relevant documents. As an additional safeguard, the reconsidered determination is made by a person "who shall have had no prior involvement with the initial determination." 20 C.F.R. § 416.1418.

■ As already mentioned, the *Yamasaki* Court felt that the short personal conferences required by the lower courts were significant in determining whether recoupment was proper. Procedurally, these conferences appear to correspond with the in-

---

**8.** Under the applicable regulation, 20 C.F.R. § 416.1400, this decision is known as an "initial determination" and gives beneficiaries a right to further review if they request it.

formal and formal conference procedures set forth in 20 C.F.R. § 416.1413(b) and (c). The problem in the present matter, as in *Yamasaki,* is the lack of any opportunity for a face to face meeting or hearing without going through a two step procedure. We frankly cannot see any value to this process and it would serve to discourage beneficiaries of the SSI program in pursuing efforts to obtain a waiver of a recoupment claim. Obviously, our personal opinion of the regulations does not warrant intervention into the agency's procedures. Here, however, we conclude that the Secretary is violating § 1383(b)(1) of the Social Security Act as well as the regulations promulgated to implement it. Therefore, on statutory grounds, these practices cannot be permitted to continue, and the Secretary will be required to amend the regulations to meet the statutory requirements. We have read the opinion of the United States Court of Appeals for the Ninth Circuit in *Yamasaki v. Schweiker,* 680 F.2d 588 (9th Cir. 1982) which interpreted the Supreme Court's ruling in *Califano v. Yamasaki* to require a hearing rather than the opportunity therefor. Although the Secretary could provide for a hearing in every case, we believe this interpretation exceeds the minimum requirements of the statute for the reasons stated in our discussion herein.

Both plaintiff and defendant have also referred us to the case of *Pope v. Railroad Retirement Bd.,* 672 F.2d 972 (D.C.Cir.1982). Proceedings in the *Pope* case had been stayed pending a decision in *Yamasaki* because *Pope* involved the amendment of Railroad Retirement Board (RRB) regulations so as to comply with the notice and hearing requirements of *Yamasaki.* Under the Railroad Retirement Act of 1974, 45 U.S.C. § 231, the RRB was empowered to recover overpayments of annuities and to waive recovery under essentially the same conditions that the SSA embodies. Upon study of *Pope* we conclude that defendant has correctly interpreted the case. In relevant part, 20 C.F.R. § 260.4(a) provides "The beneficiary shall have the right to an informal oral hearing on the issue of waiver of recovery ...." The "right", however, is waivable since in relevant part 20 C.F.R. § 260.4(b) provides as follows:

> The beneficiary shall state in the request whether he or she elects to have an oral hearing. If the beneficiary does not elect to have an oral hearing with respect to his or her request for waiver of recovery ... he or she may, along with the request, submit any evidence and argument which he or she would like to present in support of his or her case.

As these regulations indicate, a request for an oral hearing must be made to the RRB.

In Title XVI waiver cases, we conclude that a procedure allowing a beneficiary to request a hearing, rather than requiring that one be scheduled automatically, would not offend § 1383(b)(1) of the Social Security Act. The decision we do make is that the two step procedure currently utilized is improper. The Secretary could certainly adopt regulations similar to those enacted pursuant to the *Pope* decision and at the time a purportedly overpaid SSI beneficiary filed a request for waiver, require that he elect whether he desired an oral hearing before any determination on waiver was made. The Secretary could also require that the type of oral hearing (case review, informal conference, or formal conference) be specified. Another procedure, approved in *Buffington v. Schweiker,* Civil No. 734–73C2 (W.D.Wash., January 25, 1983) was one whereby "paper review" of a waiver request could be conducted initially but a prerecoupment personal conference was required without the need to request one if the "paper review" was adverse to the beneficiary. *See also Yamasaki v. Schweiker, supra.*

The type of relief that we feel is appropriate in this matter is prospective relief for SSI beneficiaries, and we decline to apply any of our current findings retroactively. We are, however, retaining jurisdiction so that the Secretary can submit for our review proposed procedures for implementation of our decision. Accordingly an appropriate order will be entered.