**LUGO, Angel and Luna, Maria by her guardian ad litem Lugo, Angel on behalf of themselves and on behalf of all others similarly Pickels, Sarah M., on behalf of Pickels, Edward and Terebieniec, Edward F., indiv. & on behalf of all others similarly situated, Intervenors,**

v.

**SCHWEIKER, Richard S., Secretary, United States Department of Health and Human Services.**

**Civ. A. No. 81–3797.**

United States District Court, E.D. Pennsylvania.

Dec. 28, 1984.

Henry J. Sommer, David L. Hill, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

Steven J. Engelmyer, Asst. U.S. Atty., Philadelphia, Pa., Randolph W. Gaines, Deputy Asst. Gen. Counsel, John B. Watson, Chief, Assistance Payments, Litigation Branch, Baltimore, Md., for defendants.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

### I. BACKGROUND

The Social Security Administration ("SSA" or "agency"), along with the Secretary of Health and Human Services ("Secretary") is charged with implementing the provisions of the Social Security Act, 42 U.S.C. §§ 301–1396 (1980), as amended ("Act"). Under the Act, Supplemental Security Income ("SSI") benefits are paid to eligible recipients. Also available under the Act are Social Security Disability Insurance ("SSDI") benefits for recipients qualifying for that program.

Like any large government bureaucracy, SSA sometimes makes mistakes. Frequently, these mistakes result in the agency paying an eligible recipient an amount less than what is statutorily required under the Act. When a recipient is not paid all that is due him or her under the Act, the missed payments are termed an underpayment. An underpayment commonly results in cases where a recipient's benefits have been terminated due to SSA's erroneous assertion that the recipient was no longer disabled. Once it has been determined that a recipient has been underpaid, the Secretary must pay the amount of the underpayment to the recipient. *See e.g. Drummond v. Heckler,* 569 F.Supp. 304 (E.D.Pa.1983).

Also prevalent among SSA's mistakes are situations where the agency has paid a recipient an amount more than what is statutorily required by the Act. Where a recipient is paid more than that due to him or her under the Act, the excess payments are termed an overpayment. Overpayments generally result from inaccurate estimates of a recipient's future income, administrative computer errors, recipient errors or retroactive changes in the law. *See* Note, *Supplemental Security Income Overpayments: Judicial Response to Administrative Decisions Which Deny Waiver of Recovery,* 18 New Eng.L.Rev. 899, 901–02 (1983).

By statute, the Secretary is directed to recover overpayments of SSDI benefits. *See* 42 U.S.C. § 404(a)(1) (1980). Such a recovery is termed recoupment. Recoupment of an overpayment is waived, however, if the recipient is "without fault" and "the recovery would defeat the purpose of [the Act] or would be against equity and good conscience." 42 U.S.C. § 404(b) (1980).

The Supreme Court has held that section 204(b) of the Act, 42 U.S.C. § 404(b), prohibits the Secretary from recouping an overpayment without first giving the overpaid recipient an opportunity for a hearing on the issue of whether the overpayment should be waived. *Califano v. Yamasaki,* 442 U.S. 682, 698, 99 S.Ct. 2545, 2556, 61 L.Ed.2d 176 (1979). *See also Bonner v. Califano,* 516 F.Supp. 310 (E.D.Pa.1981).

Similarly, the Secretary is statutorily directed to recoup overpayments of SSI benefits. *See* 42 U.S.C. § 1383(b)(1) (Supp. V. 1981). Here too, waiver is appropriate if the recipient is "without fault in connection with the overpayment," and the "recovery ... would defeat the purpose of [the Act], or be against equity or good conscience." *Id.* This provision has also been interpreted to prohibit the Secretary from recouping an overpayment without first giving the overpaid recipient an opportunity for a hearing on the issue of whether the overpayment should be waived. *See Page v. Schweiker,* 571 F.Supp. 872, 879 (M.D.Pa. 1983). *See also Schwingel v. Harris,* 631 F.2d 192, 196–97 (2d Cir.1980).

The Secretary, by regulation defines overpayments and underpayments, not by an amount over or underpaid in a given month, but by an amount over or underpaid within a period. *See* 20 C.F.R. § 416.538 quoted *infra.* If the Secretary finds that during a period a recipient has been overpaid in a given month or number of months and underpaid in another month or number of months, she sets off the amounts to

come up with an "adjusted" over or underpayment figure. The period varies with each recipient and can stretch over several years.[1] The secretary makes this within period "adjustment" without providing the recipient an opportunity for a waiver of recoupment of the overpaid amounts.

This action was commenced as a class action against the Secretary by plaintiffs Angel Lugo and Maria Luna, on behalf of themselves and other persons who have been adversely affected by the Secretary's regular policy which is challenged herein. Plaintiffs' amended complaint seeks declaratory and injunctive relief, alleging that the Secretary's failure to provide an opportunity for a hearing to determine whether a waiver of overpayment recoupment was warranted, prior to the adjustment of benefits, violated their rights under the Act and the Due Process Clause of the Fifth Amendment of the United States Constitution.

After permitting other plaintiffs to intervene, this court certified a class represented by Angel Lugo, Maria Luna, Sarah H. Pickels, on behalf of Edward Pickels, and Edward F. Terebieniec,[2] consisting of all persons who:

(1) have been, are, or will be served by the Philadelphia regional office of the United States Department of Health and Human Services;

(2) have been or will be determined eligible for social security or SSI benefits;

(3) have been or will be entitled to payment of benefits due for prior months;

(4) have had or will have all or part of retroactive benefits withheld from prompt payment or adjusted by defendant in order to recoup previous overpayment of benefits without receiving notice and an opportunity for a hearing on the issue of waiver of said recoupment or adjustment prior to such withholding or adjusting by defendant; and,

---

1. *See* 20 C.F.R. § 416.538, *infra.* See Appendix for the effect of the Secretary's definition of overpayment by period rather than by month on the named plaintiffs.

2. The factual and procedural backgrounds of the named plaintiffs' cases are set forth individually in the appendix attached to this memorandum.

(5) have made or will make a claim to defendant requesting the release of benefits withheld or adjusted. The class includes all persons who received notice of the adjusted/recouped amount of benefits within the four years prior to September 21, 1981, the date this action was commenced. The class does not include any person as to whom a court has already rendered a decision on the issues presented in this case.

Now pending before this court are cross-motions for summary judgment. On September 20, 1984, argument was heard on the motions. Plaintiffs argue that the overpayment-underpayment accounting procedure set forth in the Secretary's regulations violates sections 204(b) and 1631(b)(1) of the Act, 42 U.S.C. §§ 404(b) and 1383(b)(1). Pursuant to the challenged procedure, the Secretary recoups any overpayment made to a recipient during a period from any sum owing to such a recipient as a result of an underpayment during the same period without first providing a waiver hearing with regard to the overpayment. Plaintiffs also assert that, in addition to violating the Act, the procedure outlined above violates the Due Process Clause of the Fifth Amendment of the United States Constitution. For the reasons set forth below plaintiffs' motion will be granted; and defendant's motion will be denied.

## II. ANALYSIS

The Supreme Court has repeatedly cautioned that where a case may be decided on either constitutional or statutory grounds, the lower courts should decide the case on statutory grounds. *See Califano v. Yamasaki*, 442 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979). *New York City Transit Authority v. Beazer*, 440 U.S. 568, 582–83 and n. 22, 99 S.Ct. 1355, 1364 n. 22, 59 L.Ed.2d 587 (1979); *Ashwander v. T.V.A.*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (concurring opinion). Since I conclude that the Secretary's procedures exceed her statutory authority there is no need to reach plaintiffs' constitutional claims.

I note here the limited standard of review presented to a court when regulations promulgated by the Secretary are challenged. Courts are generally required to give great deference to agency regulations implementing a statute; and, can only set them aside if "the Secretary exceeded [her] statutory authority or if the regulation is 'arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with the law.'" *Batterton v. Francis*, 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977) (citations and footnotes omitted). *See also Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981); *Santise v. Schweiker*, 676 F.2d 925 (3d Cir.1982); *Jackson v. Heckler*, 580 F.Supp. 1077 (E.D.Pa.1984). With this principle in mind, I turn now to the Secretary's action in this case.

The Secretary is given authority to establish social security benefits regulations and procedures by section 205(a) of the Act, 42 U.S.C. § 405(a) (1980). This section provides: "[t]he Secretary shall have full power and authority to make rules and regulations and to establish procedures *not inconsistent with* the provisions of [the Act]...." 42 U.S.C. § 405(a) (emphasis added). The foregoing authority is incorporated into the SSI program. *See* 42 U.S.C. § 1383(d)(1) (Supp. V. 1981). Thus, the Secretary has the power to promulgate regulations and establish policies regarding the recoupment of overpayments under both the social security and SSI programs, as long as those regulations and policies are not inconsistent with the Act.

Pursuant to the above authority the Secretary, by regulation, has defined underpayment and overpayment. *See* 20 C.F.R. §§ 416.436, 416.437 (1984). She has also established, by regulation, the way in which the amount (of underpayment or overpayment) is determined. *See* 20 C.F.R. § 416.538 (1984). 20 C.F.R. § 416.538 provides in pertinent part:

The amount of an underpayment or overpayment is the difference between the amount paid to a recipient for a period and the amount of payments for which

such recipient actually was eligible for such period. The period with respect to a determination of the fact or amount of any overpayment or underpayment begins with the first month of any quarter for which there is a difference between the amount paid and the amount due and ends with the month immediately preceding the calendar quarter in which the initial determination of overpayment or underpayment is made....

20 C.F.R. § 416.538 (1984).

■ Plaintiffs assert that the Secretary's policy of netting of overpayments and underpayments within a "period" pursuant to the above regulation is inconsistent with the Act. I agree. This inconsistency is demonstrated by viewing the effects of the Secretary's procedure on named plaintiff Lugo.

Lugo began receiving SSI benefits when that program took effect in 1974. In 1977, he was determined not to be disabled; and, SSA terminated his benefits. After protracted litigation, both in this court and within the agency, he was notified in 1981, that he was disabled as of November, 1976. His disability made him eligible for benefits after that date. He, however, did not receive any benefits from 1977 through 1980. This failure to receive benefits when they were due resulted in an underpayment calculated by the Secretary to be $2,798.70.

Since Lugo received benefits from 1974 into 1976 when he was not due them, the Secretary also determined that Lugo had received an overpayment. She calculated the overpayment amount for those years to be $6,100.60. Instead of granting Mr. Lugo the statutorily required opportunity for a hearing to decide whether the $6,100.60 overpayment (paid during 1974 into 1976) should be waived, the Secretary, pursuant to the accounting period set forth in 20 C.F.R. § 416.538, recouped $2,798.70 of the overpayment from the underpayment (owed for 1977 through 1980) due Lugo leaving him an "adjusted" overpayment of $3,301.90.[3] This "adjustment"

leaves Lugo with the opportunity to seek waiver as to only $3301.90 of the overpayment amount, not on the full amount of $6,100.60.

As noted previously, sections 204(b) and 1631(b)(1) of the Act, 42 U.S.C. §§ 404(b) and 1383(b)(1), require the Secretary to provide a recipient an opportunity for a waiver hearing *before* recouping any overpayments under the social security and SSI programs. *See Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Page v. Schweiker,* 571 F.Supp. 872 (M.D.Pa.1983); *Bonner v. Califano,* 516 F.Supp. 310 (E.D.Pa.1981). While the Secretary seeks to justify her action as merely an accounting procedure, it is, in fact, a recoupment without opportunity for the recipient to seek a waiver of the full amount. Since the Act requires an opportunity for a waiver hearing before recoupment, the Secretary's action is inconsistent with the Act. The Secretary cannot use an accounting period to redefine overpayment and underpayment so as to deprive a recipient of a statutorily required opportunity for a hearing. The SSA regulation codified at 20 C.F.R. § 416.538 allows just that result. Accordingly, I hold that 20 C.F.R. § 416.538 is inconsistent with sections 204(b) and 1631(b)(1) of the Act.

Since the Secretary is only empowered to promulgate regulations not inconsistent with the Act, it follows that she was without authority to promulgate 20 C.F.R. § 416.538. Insofar as it permits recoupment by automatic accounting adjustments, it is, therefore, invalid.

## III. REMEDY

The Secretary will be enjoined from using the automatic adjustment set forth in 20 C.F.R. § 416.538 to evade the waiver determination hearing opportunity requirements of the Act. She will be directed to provide the statutorily required opportunity for waiver determination hearings before recouping overpayment by any means, including but not limited to setting off,

---

**3.** Plaintiffs Luna and Terebieniec have also had their respective overpayment amounts "adjusted" by the Secretary pursuant to the procedure set forth in 20 C.F.R. § 416.538. *See* Appendix.

netting or "adjusting" an amount of the overpayment against an amount of underpayment owed to a recipient.[4]

Plaintiffs Lugo, Luna, Terebieniec and the class members they represent have all had the amount individually owed to them by SSA, as a result of an underpayment, reduced because of the Secretary's illegal overpayment "adjustment" policy.[5] The Secretary will be directed to pay to Lugo, Luna, Terebieniec and the class members the amount of their respective underpayments that was illegally withheld by the Secretary pursuant to 20 C.F.R. § 416.538.

## APPENDIX

### A. *Angel Lugo*

Angel Lugo began receiving SSI benefits when that program took effect in 1974. In late 1977, Mr. Lugo's benefits were terminated, on the erroneous initial decision of SSA that he had not been disabled for any of the time that he received benefits.[6] At the same time SSA made an implicit determination that Mr. Lugo was overpaid in the amount of all of the benefits he had received up until that time.

While Mr. Lugo appealed the termination of his SSI disability benefits, he suffered the hardships of inadequate food, clothing and shelter necessarily associated with the drastic decrease in his income for over three years, until his benefits were reinstated in 1981.

When Mr. Lugo's benefits finally were reinstated in 1981, he was not paid all of the benefits which had been withheld from him for four years. Indeed, he was not paid any back benefit payments. Instead, he was notified that he owed an overpayment for the months of April 1974—No-

vember 1976 of approximately $6,000 and that all of the retroactive benefits due to him had been kept by SSA to pay back that overpayment. He was also notified that he owed additional money on the overpayment.

Mr. Lugo then applied for a waiver of his total overpayment for the period before November 1976. In response to this application he received a decision and a reconsideration decision that found him to meet all of the prerequisites for a waiver of an overpayment. However, he still did not receive the benefits which had been wrongfully withheld from 1977 until 1981 on account of his earlier overpayment. Social Security waived only that portion of the 1974–76 overpayment that was over and above the amounts wrongfully withheld from 1977–1981. SSA recouped the remainder of the overpayment by withholding from plaintiff Lugo all of the payments due from 1977 to 1981, a total of $2,798.70.

### B. *Maria Luna*

Maria Luna, the common law wife of Angel Lugo, first became entitled to SSI benefits in October 1977. However, she did not receive the benefits due her until the third quarter of 1978.[7] Beginning in the fourth quarter of 1978 and continuing through 1980, she was paid less benefits than were due to her because of the incorrect determination that Mr. Lugo was not disabled.

When Mr. Lugo's benefits were reinstated, the benefits due to Ms. Luna for this period were also withheld to repay overpayments and she was paid nothing, despite her request for a waiver of recoupment of any overpayment and a finding that she

---

**4.** I make no finding as to whether any prior waiver determination made with respect to an illegally "adjusted" overpayment is res judicata as to a subsequent waiver determination hearing with regard to a non-adjusted overpayment.

**5.** Plaintiff Pickel has received, albeit tardily, the full amount owed to her son as a result of an underpayment.

**6.** After appeal to this court, Lugo's case was remanded to SSA where he was ultimately found to have been disabled as of November, 1976.

**7.** Ms. Luna's benefits became a part of a joint payment of SSI couple's benefits to her and Mr. Lugo for the period that both were eligible. Lugo was designated as her representative payee.

met the requirements for obtaining a waiver.

After this action was filed, SSA requested a voluntary remand of the case to recompute Ms. Luna's benefits. On remand SSA decided that her benefits should not have been withheld to repay overpayments made solely to Mr. Lugo. However, a portion of the benefits due to her for the period from October of 1978 to December 1980, in the amount of $215.90, was still withheld to repay an earlier overpayment, incurred in the third quarter of 1978.

### C. Edward Pickels

Edward Pickels is a recipient of SSI benefits under Title XVI of the Social Security Act. These benefits are paid to his mother, Sarah Pickels, as his representative payee. For the past several years Edward Pickels has been a student at the Cardinal Krol Center ("C–K Center"), a branch of the Don Guanella School in Springfield, Pennsylvania. In early 1981 that facility was deemed to be retroactively eligible to receive medical assistance for its students. In June, 1981, this fact was communicated to SSA. Since students at facilities receiving medical assistance are not eligible for full SSI benefits, it was determined by the Secretary that Edward Pickels had been overpaid in the amount of $3,489 for the period beginning July, 1980 and ending in August, 1981. In November, 1981, Sarah Pickels was notified that Edward's SSI benefits would be lowered and the Secretary began recouping the overpayment from Pickels' remaining benefits.

Sarah Pickels appealed the decision that there was an overpayment and, in the alternative, requested waiver of recoupment of the overpayment. In a post-hearing decision, dated November 29, 1982, an administrative law judge ("ALJ") determined that, due to the change in the medical assistance status of the C–K Center, Edward Pickels was entitled only to reduced benefits. During the months of June, July, August and September of both 1981 and 1982, however, there were sufficiently long periods of absence from the C–K Center to entitle Pickels to full benefits. The ALJ recalculated the amount of overpayment by subtracting the amounts Pickels was underpaid in September, 1981 and June—September, 1982 (when full benefits were due, but only partial benefits were paid) from the amount that was overpaid in the period July, 1980 through May, 1981. The ALJ then ruled that recovery of this "adjusted overpayment" should be waived, since the requirements for waiver had been met in Mr. Pickels' case.

The ALJ's decision thus denied any opportunity for a waiver of the overpayment that occurred from July, 1980 to August, 1981 by repaying that money to SSA through an offset against benefits due in September, 1981 and June through September, 1982. Had those latter benefits not been wrongfully denied by SSA when they were originally due, Edward Pickels would have been given notice and an opportunity for a hearing on whether recoupment out of those benefits should have been waived.

On January 28, 1983, Sarah Pickels sought intervention as a named plaintiff in this action on behalf of Edward Pickels. Several months later, after that entry into this lawsuit, the Secretary determined that the ALJ did not follow SSA regulations in Pickels' case. According to the Secretary, the ALJ erroneously recouped the overpayment from benefits owed to Pickels *outside* the overpayment period. Subsequently, SSA issued a lump sum check to Pickels, thereby retroactively paying the amount to which plaintiff Pickels was entitled.

### D. Edward F. Terebieniec

Edward F. Terebieniec is a recipient of SSDI benefits pursuant to Title II of the Act. Plaintiff Terebieniec was found to be eligible for social security benefits due to a disability effective from June 20, 1978. By notice dated September 8, 1981, Mr. Terebieniec was notified that his benefits would be suspended effective October 1980, due to the passage of section 223(f) of the Act, 42 U.S.C. § 423(f) (1981), requiring suspension of the payment of disability benefits to any person confined in a jail as a result of a

conviction of a felony. Section 223(f), enacted in 1981[8], was made effective retroactive to October 1980. Because of the retroactive application of the law, Edward Terebieniec was overpaid in the amount of $966.90, representing benefits he received from October 1980 through February 1981.

On November 22, 1982, plaintiff Terebieniec was informed that he had been underpaid certain social security benefits based on a recomputation of his earnings effective December 1978. This notice indicated that the underpayment occurred during the period beginning December 1978 and ending September 1982. The underpayment totaled $126.30. Plaintiff Terebieniec was notified that his outstanding overpayment had been adjusted by the amount of the underpayment and that an "adjusted" overpayment balance of $840.60 remained. No notice or hearing on a possibility of waiving the overpayment was offered or given prior to this offset.

Plaintiff Terebieniec filed a request for reconsideration on December 21, 1982, objecting to the adjustment of the underpayment by the overpayment. This request was denied. However, SSA later found that he met all of the requirements for a waiver of overpayment and waived the "adjusted" overpayment by a notice dated April 17, 1983.

On January 28, 1983, Mr. Terebieniec moved to intervene as a named plaintiff in this action. Shortly thereafter he also requested a hearing on his case before an ALJ. On December 14, 1983, after his intervention as a named plaintiff in this action was allowed and after certification of the plaintiff class herein was granted, the ALJ issued a decision sustaining Mr. Terebieniec's position on the basis of the arguments raised by all of the plaintiffs in this case. Because the Secretary views the ALJ's decision in Terebieniec's case to be in conflict with her regulations and policy, Terebieniec has not received the funds due to him.

8. Pub.L. No. 96–473, § 5(c), 94 Stat. 2265 (1981), amended by Pub.L. No. 97–123 § 6, 95 Stat. 1664 (1983), repealed by Pub.L. No. 98–21, Title III § 339(b), 97 Stat. 134 (1983).